UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KENNETH WHITEHEAD and LISA WHITEHEAD, | * * * |
| Plaintiffs, | * * |
| v. | * Civil Action No. 14-cv-13408-IT * |
| HMC ASSETS, LLC as trustee for CAM MORTGAGE TRUST 2013-1 and BSI FINANCIAL SERVICES, INC., | * * * * |
| Defendants. | * |

MEMORANDUM & ORDER

October 10, 2014

TALWANI, D.J.

I.  Introduction

This case concerns a threatened foreclosure following multiple reassignments of a mortgage. Because Defendant HMC Assets, LLC as Trustee for CAM Mortgage Trust 2013-1 ("HMC") appears to now have both the note and mortgage, Plaintiffs Kenneth and Lisa Whitehead have failed to show a likelihood of success on the merits of their underlying claims. Accordingly, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction [#8] is DENIED.

II. Background

On December 2, 2004, Plaintiffs executed a note to Novelle Financial Services ("Novelle") in the amount of $398,250.00. Compl. ¶4 [#6]. This loan was secured by a mortgage on Plaintiffs' residence in North Andover, Massachusetts. Id.

On April 25, 2014, HMC Assets, LLC as Trustee of CAM Mortgage Trust 2013-1

("HMC") published a notice of foreclosure sale for Plaintiffs' property in the North Andover Citizen, a local paper in North Andover, Massachusetts. See Aff. Reneau J. Longoria Supp. Opp'n Mot., ¶16, Ex. 7 [#14]. On April 28, 2014, HMC also sent Plaintiffs a notice of intent to foreclose, which stated that a foreclosure sale would occur on or after May 22, 2014. See id. at ¶17, Ex. 8. Attached to the notice of intent to foreclose was a certificate prepared by BSI Financial Services ("BSI Financial") that purported to state the basis of HMC's authority to foreclose and attached the relevant loan documents, including a copy of Plaintiffs' note. Id. at Ex. 8.

The foreclosure sale, originally slated for no earlier than May 22, 2014, was postponed three times before this case came before this court. Twice, the foreclosure sale was rescheduled due to Lisa Whitehead's then-pending petitions for bankruptcy relief. See Defs.' Statement Material Facts Supp. Mem. Opp'n Pls.' Mot. Prelim. Inj., ¶¶25-26 [#12] [hereinafter, Defs.' Facts]. The sale was then postponed a third time after Plaintiffs initiated the instant action in the Superior Court of Essex County, Massachusetts, and that court granted Plaintiffs' motion for a temporary restraining order. See Order Allowing Temporary Restraining Order, 33 [#6]. Defendants subsequently removed the case to federal court, see Notice Removal Matter United States District Court, 1-7 [#1], and on September 8, 2014, Plaintiffs filed their Motion for Temporary Restraining Order and Preliminary Injunction [#8]. In support of this motion, Plaintiffs assert that HMC has not shown that it gained possession of both Plaintiffs' note and mortgage from their original lender, Novelle. Plaintiffs assert that without possession of both their note and mortgage, Defendants may not foreclose on their home.

In opposition to Plaintiffs' motion for a preliminary injunction, Defendants assert that they gained possession of Plaintiffs' mortgage through a set of assignments. According to

Defendants, on November 3, 2006, Novelle assigned Plaintiffs' mortgage to GRP Loan, LLC ("GRP Loan"). See Aff. Gary McCarthy Supp. Opp'n Mot., Ex. 1 [#13-18]. This assignment, a copy of which was presented to the court, was notarized and recorded in the Essex County Registry of Deeds. See id.

Defendants explain that by late 2011 Plaintiffs were in significant default on their loan obligations. See id. at Ex. H [#13-17]. An October 26, 2011, letter sent to Plaintiffs by the loan's then-servicer, Select Portfolio Servicing, Inc. ("Select"), stated that the loan's outstanding balance was $247,968.42. See id. This letter gave Plaintiffs 150 days to cure the loan default and stated that a failure to cure by March 24, 2012, could result in acceleration of the loan and the initiation of foreclosure proceedings. Id.

According to Defendants, despite the fact that Plaintiffs were in default on their loan, Plaintiffs' mortgage continued to be assigned. See Defs.' Facts at ¶¶14-15, 17. On July 30, 2012, two assignments occurred in quick succession. First, GRP Loan assigned the mortgage to DLJ Mortgage Capital, Inc. ("DLJ Mortgage"). See Aff. Gary McCarthy Supp. Opp'n Mot. at Ex. J [#13-19]. Second, DLJ Mortgage immediately assigned the mortgage to HMC Assets, LLC as Trustee of CAM V Trust. See id. at Ex. K [#13-20]. A final assignment occurred on May 8, 2013, when HMC Assets, LLC as Trustee of CAM V Trust assigned the mortgage to HMC Assets, LLC as Trustee of CAM Mortgage Trust 2013-1 ("HMC"). See id. at Ex. O [#13-24]. Each of these assignments was notarized and recorded in the Essex County Registry of Deeds. See id. at Exs. J-K, O. After HMC purchased the mortgage, it hired BSI Financial to act as the loan's servicer; BSI Financial took over the position from Select. See id. at Ex. O.[1]

---

[1] By this time, Plaintiffs purportedly owed significantly more on their mortgage than the value of their original loan. A letter sent by BSI Financial on August 6, 2014, lists the full amount owed as $746,038.54. See Aff. Gary McCarthy Supp. Opp'n Mot. at Ex. Q [#13-26].

3

On September 18, 2014, the court heard oral argument on the pending motion. At this hearing, Defendants' counsel presented the original note. The note presented to the court, however, did not match a version of the note submitted electronically with Defendants' opposition papers. Specifically, affixed to the hardcopy note were two allonges – the first endorsed specifically from Novelle to GRP Loan and the second endorsed in blank by GRP Loan. In contrast, Defendants' electronic submission showed only the first allonge, endorsed in blank by Novelle. Compare id. at Ex. E [#13-14] (presenting a copy of the note identical to the hardcopy presented at the hearing), with Aff. Reneau J. Longoria Supp. Opp'n Mot., Ex. 8 (presenting a copy of the note with only one allonge affixed), and Defs.' Verified Answer, Affirmative Defenses, and Countercls., Ex. 4 [#10-4] (same).

Due to this discrepancy, Defendants agreed to provide additional documents to the court and to voluntarily postpone the foreclosure sale for a period of three weeks. See Order, 1 [#16]. Based on the postponement, the court denied Plaintiffs' motion for a temporary restraining order. Id. The court held over determination of Plaintiffs' motion for a preliminary injunction and gave Defendants an opportunity to file supplemental affidavits authenticating the allonges affixed to the hardcopy note. Id.

On September 26, 2014, Defendants filed a supplemental affidavit from Gary McCarthy, who stated that he has worked at HMC since April 30, 2013. See Supplemental Aff. Gary McCarthy, ¶1 [#22]. This affidavit purports to be based on McCarthy's personal knowledge as well as a review of records held by HMC and BSI Financial, but the specific records are not identified. Id. at ¶3. In this affidavit, McCarthy asserts that the discrepancy in note versions was caused by BSI Financial's mistaken reliance on an outdated version of the note.

Specifically, McCarthy claims that the note's original holder, Novelle, executed and affixed the first allonge, bearing a blank endorsement, to the note at some unspecified time. See id. at ¶7. At that same time, a copy of the note and allonge were purportedly sent to Select, the loan's servicer, and saved electronically in Select's files. See id. at ¶8. McCarthy states that at some later time Novelle transferred physical possession of the original note to GRP Loan and filled out the first allonge so that the note was endorsed specifically to GRP Loan. See id. at ¶¶9-10. Then, on October 26, 2009, GRP Loan purportedly executed and affixed the second allonge, which was endorsed in blank, to the note. See id. at ¶11.

According to McCarthy, on July 12, 2012, the note with both allonges affixed was transferred to HMC.[3] See id. at ¶13. After HMC took possession of Plaintiffs' note, it transferred servicing rights from Select to BSI Financial. See id. at ¶15. Select purportedly then sent a copy of its electronic records related to Defendants' loan to BSI Financial. See id. at ¶16. McCarthy asserts, however, that the copy of the note included in Select's records had never been updated. Id. In consequence, the copy of the note BSI Financial received was outdated; it showed only the first allonge bearing a blank endorsement from Novelle. See id. at ¶18.

McCarthy states that on December 18, 2013, BSI Financial used this outdated copy of the note when it certified in writing that HMC owned both Plaintiffs' note and mortgage. See id. at ¶19, Ex. C; 209 C.M.R. 18.21A(2)(c) (requiring third party loan servicers to "certify in writing

---

[3] McCarthy's affidavit states that it was HMC Assets, LLC as Trustee for CAM Mortgage Trust 2013-1 that purchased Defendants' mortgage and took possession of their note in July 2012. See Supplemental Aff. Gary McCarthy at ¶1, 11-12. In contrast, the copy of the mortgage assignment provided by Defendants indicates that in July 2012 the mortgage was assigned to HMC Assets, LLC as Trustee of CAM V Trust. See Aff. Gary McCarthy Supp. Opp'n Mot. at Ex. K. The mortgage was not assigned specifically to CAM Mortgage Trust 2013-1 until May 8, 2013. See id. at Ex. O. This apparent discrepancy is not explained by McCarthy, whose affidavit never references the mortgage's assignment from HMC Assets, LLC as Trustee for CAM V Trust into the current trust. Nonetheless, the discrepancy does not contradict McCarthy's plausible explanation for how and when the two allonges were affixed to the note.

5

the basis for asserting that the foreclosing party has the right to foreclose"). This certification, with the outdated note attached, was forwarded to Defendants' counsel and provided to Plaintiffs with the April 28, 2014, notice of intent to foreclose. See Aff. Reneau J. Longoria Supp. Opp'n Mot., at Ex. 8. The certification, with note attached, was also filed with the court as part of Defendants' opposition papers. Subsequent to this submission, however, HMC sent Defendants' counsel the original note held in their possession, and it was this original that Defendants' counsel presented to the court on September 18, 2014. See Supp. Aff. Reneau Longoria, ¶¶9-13 [#23]. On September 24, 2014, BSI Financial executed a "Corrective Certification" using a copy of the note with both allonges. See Supp. Aff. Gary McCarthy at ¶23, Ex. D.

III. Discussion

*A. The Legal Standard for Preliminary Injunctions*

A court may issue a preliminary injunction if the plaintiff shows: (1) a reasonable likelihood of success on the merits of its claim; (2) that the plaintiff will suffer irreparable injury if the injunctive relief is not granted; (3) that the injury the plaintiff will suffer in the absence of an injunction outweighs the injury to the defendant that will result from the injunction; and (4) that the injunction would not harm the public interest. E.g., Corporate Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013) (citing Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996)). The first factor, the likelihood of success on the merits, "is the main bearing wall of the four-factor framework," Ross-Simons, 102 F.3d at 16 (citing Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993); see also Auburn News Co. v. Providence Journal Co., 659 F.2d 273, 277 (1st Cir. 1981)), but the moving party must demonstrate all four factors to obtain relief, see IKON Office Solutions, Inc. v. Belanger, 59 F. Supp. 2d 125, 128 (D. Mass. 1999) ("Failure to demonstrate all of the requirements proves fatal for a request for relief."

(citing Mass. Coal. of Citizens with Disabilities v. Civil Def. Agency & Office of Emergency Preparedness, 649 F.2d 71, 74 (1st Cir. 1981))).

*B. Plaintiffs' Likelihood of Success on the Merits*

To succeed on the first preliminary-injunction factor, Plaintiffs must show a likelihood of success on the merits of their claim that HMC does not possess both Plaintiffs' mortgage and note, and therefore lacks the power to foreclose on their property under Massachusetts law. See Eaton v. Fed. Nat'l Mortg. Ass'n, 462 Mass. 569, 583-86 (2012).

Under Massachusetts law, a foreclosure sale must be initiated by a mortgagee that holds possession of both the note and mortgage, or by the authorized agent of such a mortgagee. Id. at 584-86. Prior to a foreclosure sale, the mortgagee or its agent must provide public notice of the foreclosure sale and must send a letter of intent to foreclose to the mortgagor. See Mass. Gen. Laws. ch. 244, § 14. In cases where the mortgage was received via assignment, this notice of intent to foreclose is only valid if "(i) . . . a chain of assignments, evidencing the assignment of the mortgage to the foreclosing mortgagee has been duly recorded in the registry of deeds of the county or district where the land lies and (ii) the recording information for all recorded assignments is referenced in the notice of sale." Id. Massachusetts law further requires creditors to file an affidavit swearing that prior to noticing a foreclosure the creditor ensured it did not know or have reason to know "that the mortgagee is neither the holder of the mortgage note nor the authorized agent of the note holder." Id. at § 35C.

Plaintiffs argue that HMC lacks proper possession of both their mortgage and note, and thus does not have power to foreclose.

*i. Possession of Plaintiffs' Mortgage*

In support of their motion for a preliminary injunction, plaintiffs present three arguments

7

as to why Defendants' alleged possession of their mortgage is invalid: (1) the mortgage was improperly "split" from the underlying note, (2) assignment of the mortgage to CAM Mortgage Trust 2013-1 was in violation of that trust's Pooling and Servicing Agreement, and (3) no mortgage assignments were ever recorded.

As to the first argument, under Massachusetts law, a mortgage and note may travel separately and be held by distinct entities. Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 292 (1st Cir. 2013); see also Butler v. Deutsche Bank Trust Co. Ams., 748 F.3d 28, 32-33 (1st Cir. 2014).

As to the second argument, under Massachusetts law "a mortgagor does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title." Culhane, 708 F.3d at 291. Violations of a trust's pooling and servicing agreement would only render the assignment voidable. See Butler, 748 F.3d at 37 ("Under Massachusetts law, it is clear that claims alleging disregard of a trust's PSA are considered voidable, not void.").

Plaintiffs' third argument suggests that no mortgage assignments were properly recorded. Defendants, however, have presented copies of a complete chain of assignments, each of which has been notarized and recorded in the Essex County Registry of Deeds, showing the mortgage traveling from Novelle to HMC. See Aff. Gary McCarthy Supp. Opp'n Mot. at Ex. I-K, O. Plaintiffs do not suggest that these copies are falsified and do not provide the court with any other reason that the records should not be considered.

*ii. Possession of Plaintiffs' Note*

Plaintiffs also argue that HMC does not validly possess their note. In support of this claim, Plaintiffs introduced a "Forensic Loan Securitization Legal Chain of Title and Analysis

Report" and a supporting affidavit by the report's author, Peter J. Ancona. According to Ancona's research, on March 3, 2005, Plaintiff's note entered IMPAC CMB Trust Series 2005-2. See Aff. Peter J. Acona Opp'n Lender's Legal Standing, ¶11-12, 32-33 [#8-1]. Accordingly, Acona concludes that Novelle no longer had possession of the note in 2006, and thus could not have transferred possession to GRP Loan. Id. at ¶46.

Before the court, Defendants contested the findings of this report and presented a hardcopy of Plaintiffs' note. As explained above, the note presented to the court did not match an electronic version of the note previously submitted with Defendants' opposition papers. As such, the court questioned the authenticity of the allonges affixed to the note and gave Defendants additional time to file supplemental affidavits authenticating those allonges.

The court need not decide here whether the supplemental affidavit provided by McCarthy will ultimately be sufficient to prove the authenticity of both allonges affixed to the note. At later stages of this proceeding, the court may need to revisit this affidavit to ensure all information therein is admissible and may require an evidentiary hearing on the issue. Nonetheless, McCarthy has set forth a plausible explanation for the discrepancy, which Plaintiffs have not called into question. See Corporate Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013) (requiring party seeking a preliminary injunction to bear burden of showing a likelihood of success on the merits).

The hardcopy note presented to the court appears to have been endorsed in blank by GRP Loan. Under Massachusetts law, "the bearer of a note indorsed in blank is presumed to be a holder in due course." Parker v. Roberts, 243 Mass. 174, 177 (1922); see also Mass. Gen. Laws ch. 106, § 1-210(a) (defining "holder" as including "the person in possession of a negotiable instrument that is payable . . . to bearer"); Leavitt v. Wintman, 234 Mass. 248, 391 (1919) ("A

9

promissory note payable to the order of the maker and by him endorsed in blank becomes in effect payable to bearer . . . .").

Accordingly, HMC's possession of the note is strong evidence that it may assert ownership of the note for the purposes of initiating foreclosure as a holder in due course. E.g., Parker, 243 Mass. at 177. Moreover, because the note's blank endorsement makes it a form of bearer paper, e.g., Levitt, 234 Mass. at 391, the court need not trace each step of the note's travel between Novelle and HMC. Even if IMPAC CMB Trust Series 2005-2 did possess the note at some point, this alone would not invalidate HMC's current claim of possession. The court further notes that Plaintiffs do not dispute that their mortgage has been in default since 2006. Nonetheless, no other entity has sought a remedy for that default. See, e.g., Woods, 733 F.3d at 356 n.6. This fact is additional evidence tending to show that no other party possesses the note.

*iii. Validity of Defendants' Notice of Intent to Foreclose*

Much of the dispute in this case could have been avoided if Defendants had ensured properly that its third-party loan servicer had the correct documents needed to meet its obligations under Massachusetts law. A third-party loan servicer must "certify in writing the basis for asserting that the foreclosing party has the right to foreclose, including . . . certification of the chain of title and ownership of the note and mortgage." 209 C.M.R 18.21A(2). This regulation further mandates that "the third party loan servicer shall provide such certification to the borrower with the notice of foreclosure, provided pursuant to M.G.L. c. 244, § 14[,] and shall also include a copy of the note with all required endorsements." Id. (emphasis added).

Here, Defendants concede that the notice of intent to foreclose sent to Plaintiffs on April 28, 2014, included a certification of HMC's right to foreclose that was based on the outdated copy of Plaintiffs' note. This flawed certification reveals a fundamental problem with reliance

10

on copied records of the sort held by third-party servicers and often transferred hastily between entities as part of the bundling and securitization of mortgage loans.  As this case bears out, sloppy record keeping and the failure to double-check such copies against the original documents prior to initiating foreclosure proceedings may result in the use of incorrect and outdated information.  The use of such information hampers the mortgagors' ability to be fully informed of the foreclosure proceedings as well as the courts' ability to efficiently resolve any related disputes.  Rather than relying on potentially obsolete copies pulled from files of a loan servicer or other third party and engaging in a close review of documents in connection with a motion for a preliminary injunction, Defendants should have reviewed these documents prior to asserting a right to foreclose.

Although Defendants have now filed a corrected certification with the court, by Defendants' own admission the copy of the note provided to Plaintiffs as part of the certification sent on April 28, 2014, did not include all required endorsements.  Plaintiffs have not argued for a preliminary injunction based on this deficiency.   Nonetheless, the court notes that the regulation provides that violations "shall be considered an unfair or deceptive act or practice under M.G.L. c. 93A, § 2 and subject to the penalties contained in M.G.L. c. 93A."  209 C.M.R. § 18.22.  Accordingly, Defendants are proceeding at their own risk in relying on the original notice rather than renoticing the foreclosure sale with the corrected certification.

IV.     Conclusion

For the reasons stated above, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction [#8] is DENIED.

IT IS SO ORDERED.

Date: October 10, 2014                                          /s/ Indira Talwani
                                                                United States District Judge